1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11

12    JOSE ARELLANO, individually, and       No. 2:23-cv-1540 WBS DMC
      on behalf of all others similarly
13    situated,

14              Plaintiff,                    MEMORANDUM AND ORDER RE:
                                             PLAINTIFF'S MOTION FOR
15         v.                                PRELIMINARY APPROVAL OF
                                             CLASS ACTION
16    THE J.M. SMUCKER COMPANY, a
      corporation; SMUCKER NATURAL
17    FOODS, INC., a corporation;
      SMUCKER NATURAL FOODS, LLC, a
18    limited liability company; SMUCKER
      FOODSERVICE, INC., a corporation;
19    SMUCKER FRUIT PROCESSING CO., a
      corporation; SMUCKER RETAIL FOODS,
20    INC., a corporation; SMUCKER SALES
      AND DISTRIBUTION COMPANY, a
21    corporation; FIDELITY INVESTMENTS
      INSTITUTIONAL OPERATIONS COMPANY
22    LLC, a limited liability company;
      FIDELITY INVESTMENTS INSTITUTIONAL
23    OPERATIONS COMPANY, INC., a
      corporation; SMUCKER FRUIT
24    PROCESSING COMPANY, a corporation;
      TRUROOTS, LLC, a limited liability
25    company; and DOES 1 through 10,
      inclusive,
26
                Defendants.
27

28

                                  1

----oo0oo----

Plaintiff Jose Arellano ("plaintiff"), individually and on behalf of similarly situated individuals, brought this putative class action against defendants The J.M. Smucker Company; Smucker Natural Foods, Inc.; Smucker Natural Foods, LLC; Smucker Foodservice, Inc.; Smucker Fruit Processing Co.; Smucker Retail Foods, Inc.; Smucker Sales and Distribution Co.; Fidelity Investments Institutional Operations Co., LLC; Fidelity Investments Institutional Operations Co., Inc.; and TruRoots, LLC, alleging violations of California wage and hour laws. (See Docket No. 1-4 Ex. A.) Before the court is plaintiff's unopposed motion for preliminary approval of a class action settlement. (See Docket No. 44; see also Docket No. 47.)

I.   Background and Proposed Settlement

On April 27, 2023, plaintiff filed suit in Butte County Superior Court. (See Docket No. 1-4 Ex. A at 6-32.) Plaintiff amended the complaint on May 15, 2023. (Docket No. 1-4 Ex. A at 41-67.) On July 25, 2023, plaintiff voluntarily dismissed Fidelity Investments Institutional Operations Co., LLC, and Fidelity Investments Institutional Operations Co., Inc. (Docket No. 1-4 at ¶ 7.)

On July 27, 2023, defendants removed the action to this court on the basis of diversity jurisdiction under the Class Action Fairness Act ("CAFA"). (See Docket No. 1 at ¶¶ 1, 15-86 (citing 28 U.S.C. § 1332(d)).) On November 18, 2023, the parties stipulated to voluntarily dismiss defendants The J.M. Smucker Company; Smucker Natural Foods, Inc.; Smucker Natural Foods, LLC; Smucker Foodservice, Inc.; Smucker Fruit Processing Co.; Smucker

2

Retail Foods, Inc.; and Smucker Sales and Distribution Co. (See Docket No. 34.) Thus, defendant TruRoots, LLC ("defendant" or "TruRoots") is the only defendant remaining. (Cf. Docket No. 1-1 at ¶¶ 3-4 & n.1 (explaining defendant's corporate structure).)

Defendant employed plaintiff as an hourly-paid or non-exempt employees at its distribution facility in Chico, California. (See Docket No. 44 at ¶¶ 2-3; see also Docket No. 1-1 at ¶¶ 2-6.) Plaintiff brought this action on behalf of himself and similarly situated individuals for (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal breaks, (4) failure to provide rest breaks, (5) failure to pay wages due at end of employment, (6) failure to furnish accurate itemized wage statements, (7) failure to produce requested employment records, and (8) violations of California's Unfair Competition Law. (See Docket No. 1-4 Ex. A at 6-32.)

The putative class consists of all current and former hourly-paid or non-exempt employees who worked for defendant in California between October 31, 2018, and April 14, 2025. (See Docket No. 44-2 at §§ 1.4, 1.11, 1.15.) The putative class has 152 individuals. (See Docket No. 44-1 at ¶¶ 16-17.)

The parties proposed a gross settlement amount of $350,000.00. (Docket No. 44-2 at §§ 1.21, 3.1.) This includes the following: (1) a $5,000 incentive award for plaintiff; (2) an estimated $116,666.67 in attorneys' fees for plaintiff's counsel; (3) a maximum of $17,000.00 in litigation expenses for plaintiff's counsel; (4) $7,000 in payment for the expenses of the settlement administrator; and (5) a net settlement amount of $204,333.33 for the 152 class members. (See, e.g., Docket No.

3

1  44-1 at ¶¶ 12, 16, 22-23, 29 & n.1; Docket No. 44-2 Ex. 1 at

2  §§ 1.21, 3.1-3.2, 3.2.1-3.2.4.)

3       Since the class has 152 members, the fund would pay

4  each an average of $1,344.40, excluding plaintiff's incentive

5  award, to be distributed to class members based on their number

6  of workweeks during the class period. (See Docket No. 44-1 at

7  ¶¶ 16, 22 & n.2.)

8       The settlement would release defendant from any and all

9  class claims that were pled or could have been pled based on the

10 factual allegations in the operative or prior complaints.

11 (See Docket No. 44-2 at §§ 5.1, 5.1.1, 5.2.)

12 II.  Discussion

13      Federal Rule of Civil Procedure 23(e) provides that

14 "the claims, issues, or defenses of a certified class may be

15 settled . . . only with the court's approval."  Fed. R. Civ. P.

16 23(e) (cleaned up).  This Order is the first step in that process

17 and analyzes only whether the proposed class action settlement

18 deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.

19 Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).

20      Preliminary approval authorizes the parties to give

21 notice to putative class members of the settlement agreement and

22 lays the groundwork for a future fairness hearing, at which the

23 court will hear objections to (1) the treatment of this

24 litigation as a class action and (2) the terms of the settlement.

25 See id.; see also Diaz v. Tr. Territory of Pac. Islands, 876 F.2d

26 1401, 1408 (9th Cir. 1989) (same).  The court will reach a final

27 determination as to whether the parties should be allowed to

28 settle the class action on their proposed terms after that

1  hearing.

2       Where the parties reach a settlement agreement prior to

3  class certification, the court must first assess whether a class

4  exists.  Staton v. Boeing Co., 327 F.3d 938, 952-53 (9th Cir.

5  2003).  "Such attention is of vital importance, for a court asked

6  to certify a settlement class will lack the opportunity, present

7  when a case is litigated, to adjust the class, informed by the

8  proceedings as they unfold."  Id. (cleaned up).  The parties

9  cannot "agree to certify a class that clearly leaves any one

10 requirement unfulfilled."  Murillo, 266 F.R.D. at 473.

11      Consequently, the court cannot blindly rely on the fact

12 that the parties have stipulated that a class exists for purposes

13 of settlement.  See Amchem Prods. Inc. v. Windsor, 521 U.S. 591,

14 621-22 (1997) ("Federal courts, in any case, lack authority to

15 substitute for Rule 23's certification criteria a standard never

16 adopted -- that if a settlement is 'fair,' then certification is

17 proper.").

18      "Second, the district court must carefully consider

19 'whether a proposed settlement is fundamentally fair, adequate,

20 and reasonable,' recognizing that 'it is the settlement taken as

21 a whole, rather than the individual component parts, that must be

22 examined for overall fairness . . . .'"  Staton, 327 F.3d at 952

23 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

24 1998), abrogated on other grounds by Wal-Mart Stores, Inc. v.

25 Dukes, 564 U.S. 338 (2011)) (cleaned up).

26      A.   Class Certification

27      The putative class consists of "all persons employed by

28 defendant in California and classified as hourly-paid or non-

1  exempt employees who worked for defendant or its predecessor
2  during the class period," where "the class period" is October 31,
3  2018, to April 14, 2025.  (See Docket No. 44-2 at §§ 1.4, 1.11,
4  1.15 (cleaned up).)  To be certified, the putative class must
5  satisfy the requirements of Federal Rules of Civil Procedure
6  23(a) and 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512
7  (9th Cir. 2013).

8           1.   Rule 23(a)

9           Rule 23(a) restricts class actions to cases where: "(1)
10  the class is so numerous that joinder of all members is
11  impracticable; (2) there are questions of law or fact common to
12  the class; (3) the claims or defenses of the representative
13  parties are typical of the claims or defenses of the class; and
14  (4) the representative parties will fairly and adequately protect
15  the interests of the class."  See Fed. R. Civ. P. 23(a).

16              a.   Numerosity

17           "Courts have routinely found the numerosity requirement
18  satisfied when the class comprises 40 or more members."  Collins
19  v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011)
20  (Wanger, J.).  Here, the proposed class of 152 members more than
21  satisfies the numerosity requirement.

22              b.   Commonality

23           Commonality requires that the class members' claims
24  "depend upon a common contention" that is "capable of classwide
25  resolution -- which means that determination of its truth or
26  falsity will resolve an issue that is central to the validity of
27  each one of the claims in one stroke."  Wal-Mart Stores, 564 U.S.
28  at 350.  "All questions of fact and law need not be common to

1  satisfy the rule.  The existence of shared legal issues with

2  divergent factual predicates is sufficient, as is a common core

3  of salient facts coupled with disparate legal remedies within the

4  class." Hanlon, 150 F.3d at 1019-20.  "So long as there is 'even

5  a single common question,' a would-be class can satisfy the

6  commonality requirement of Rule 23(a)(2)." Wang v. Chinese Daily

7  News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (quoting Wal-Mart

8  Stores, 564 U.S. at 358-59).

9       Here, the claims implicate common questions of law and

10  fact because they are premised on policies and practices that

11  allegedly applied to all class members equally.  All class

12  members worked for the same entity or its predecessor during the

13  same time period.  (See Docket No. 44-2 at §§ 1.4, 1.11, 1.15.)

14  As a result, the class members share several common factual

15  questions surrounding the circumstances of their employment as

16  well as several common legal questions concerning whether

17  defendant's policies and practices violated California law.

18       Generally, "challenging a policy common to the class as

19  a whole creates a common question whose answer is apt to drive

20  the resolution of the litigation." Ontiveros v. Zamora,

21  No. 2:08-cv-567 WBS DAD, 2014 WL 3057506, at *5 (E.D. Cal. July

22  7, 2014) (cleaned up).  Even if individual members of the class

23  will be entitled to different amounts of damages because, for

24  instance, defendant employed them for different amounts of time,

25  "the presence of individual damages cannot, by itself, defeat

26  class certification." Leyva, 716 F.3d at 514.  Accordingly,

27  these common questions of law and fact satisfy the commonality

28  requirement.

1                          c.    Typicality

2              Typicality requires that plaintiff have claims

3    "reasonably co-extensive with those of absent class members," but

4    their claims do not have to be "substantially identical."

5    Hanlon, 150 F.3d at 1019-20.  The test for typicality "is whether

6    other members have the same or similar injury, whether the action

7    is based on conduct which is not unique to plaintiff, and whether

8    other class members have been injured by the same course of

9    conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th

10   Cir. 1992).

11             Plaintiff and other class members have all worked for

12   defendant and were allegedly subject to the same policies and

13   practices in question, such as underpayment of wages.  Although

14   the facts might differ for individual class members, the basis

15   for their alleged injuries and the parties purportedly

16   responsible for those injuries are the same.  The proposed class

17   therefore meets the typicality requirement.

18                  d.    Adequacy of Representation

19             To resolve the question of adequacy, the court must

20   consider two factors: (1) whether plaintiff and his counsel have

21   any conflicts of interest with other class members, and (2)

22   whether plaintiff and his counsel will vigorously prosecute the

23   action on behalf of the class.  In re Hyundai & Kia Fuel Econ.

24   Litig., 926 F.3d 539, 566-67 (9th Cir. 2019).

25                     i.    Conflicts of Interest

26             There do not appear to be any conflicts of interest for

27   purposes of preliminary approval.  (See Docket No. 44 at 14-15.)

28   Plaintiff's interests are generally aligned with those of the

1  putative class members, who suffered injuries similar to those

2  suffered by plaintiff.  See Amchem, 521 U.S. at 625-26.

3       The settlement provides for a $5,000 incentive award

4  for plaintiff.  (See Docket No. 44-2 at §§ 1.13, 3.2.1.)  While

5  the provision of an incentive award raises the possibility that

6  plaintiff's interest in receiving that award will cause his

7  interests to diverge from the class's interest in a fair

8  settlement, the Ninth Circuit has specifically approved the award

9  of "reasonable incentive payments."  Staton, 327 F.3d at 977-78.

10  The court, however, must "scrutinize carefully the awards so that

11  they do not undermine the adequacy of the class representatives."

12  Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th

13  Cir. 2013).

14       Incentive awards "are intended to compensate class

15  representatives for work done on behalf of the class," and "to

16  make up for financial or reputational risk undertaken in bringing

17  the action."  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59

18  (9th Cir. 2009).  Indeed, the Ninth Circuit has consistently

19  recognized incentive awards are "fairly typical."  Id.  In

20  particular, courts have found that "a $5,000 incentive award is

21  'presumptively reasonable' in the Ninth Circuit."  See Roe v.

22  Frito-Lay, Inc., No. 14-cv-00751, 2017 WL 1315626, at *7-8 (N.D.

23  Cal. Apr. 7, 2017) (quoting Smith v. Am. Greetings Corp., No. 14-

24  cv-02577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016)).

25       Here, the incentive award is $5,000, placing it just

26  within the upper limit typically deemed reasonable within the

27  Ninth Circuit.  Moreover, plaintiff's counsel represents that

28  plaintiff has expended significant time participating in this

1    case. (See Docket No. 44-1 at ¶¶ 24-28.) The incentive payment

2    thus appears appropriate at this stage. However, counsel should

3    present further evidence of plaintiff's efforts towards receiving

4    an incentive award at final approval.

5                    ii.  Vigorous Prosecution

6              The second portion of the adequacy inquiry examines the

7    vigor with which plaintiff and his counsel have pursued the class

8    claims. "Although there are no fixed standards by which 'vigor'

9    can be assayed, considerations include competency of counsel and,

10   in the context of a settlement-only class, an assessment of the

11   rationale for not pursuing further litigation." Hanlon, 150 F.3d

12   at 1021.

13             Here, plaintiff's counsel appear to be experienced

14   employment litigators with class action experience which

15   qualifies them to pursue the interests of the class. (See Docket

16   No. 44-1 at ¶¶ 34-42.) This background, coupled with the work

17   performed thus far, suggest that plaintiff's counsel is well-

18   equipped to handle this case. (See id.) Further, plaintiff's

19   counsel appear to have conducted a thorough factual investigation

20   and thorough legal research and appears to have fully considered

21   the strengths and weaknesses of this case in deciding to accept

22   the terms of the proposed settlement agreement. (See id. at

23   ¶¶ 5-23.) The court finds no reason to doubt that plaintiff's

24   counsel is well qualified to conduct the proposed litigation and

25   assess the value of the settlement. Accordingly, the court

26   concludes that Rule 23(a)'s adequacy requirement is satisfied for

27   the purpose of preliminary approval.

28             2.   Rule 23(b)

1    After fulfilling the threshold requirements of Rule

2  23(a), the proposed class must satisfy the requirements of one of

3  the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.

4  Plaintiff seeks class certification under Rule 23(b)(3), which

5  provides that a class action may be maintained only if (1) "the

6  court finds that questions of law or fact common to class members

7  predominate over questions affecting only individual members" and

8  (2) "that a class action is superior to other available methods

9  for fairly and efficiently adjudicating the controversy."  Fed.

10 R. Civ. P. 23(b)(3).

11    a.  Predominance

12    "The predominance analysis under Rule 23(b)(3) focuses

13 on 'the relationship between the common and individual issues' in

14 the case and 'tests whether proposed classes are sufficiently

15 cohesive to warrant adjudication by representation.'"  Wang, 737

16 F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).

17    Here, the claims brought by the proposed settlement

18 class all arise from defendant's alleged practices and policies

19 with respect to their employment.  The class claims thus

20 demonstrate a "common nucleus of facts and potential legal

21 remedies" that can properly be resolved "in a single

22 adjudication."  See Hanlon, 150 F.3d at 1022-23.  Although there

23 are differences in the facts pertaining to individual class

24 members and the amount of injury sustained, such as how long each

25 worked for defendant, there is no indication that those

26 variations are "sufficiently substantive to predominate over the

27 shared claims."  See Murillo, 266 F.R.D. at 476-77 (quoting

28 Hanlon, 150 F.3d at 1022-23).  Accordingly, the court finds

11

1   common questions of law and fact predominate over questions

2   affecting only individual class members.

3                    b.   <u>Superiority</u>

4         Rule 23(b)(3) sets forth four non-exhaustive factors

5   that courts should consider when examining whether "a class

6   action is superior to other available methods for fairly and

7   efficiently adjudicating the controversy."  Fed. R. Civ. P.

8   23(b)(3).  They are: "(A) the class members' interests in

9   individually controlling the prosecution or defense of separate

10  actions; (B) the extent and nature of any litigation concerning

11  the controversy already begun by or against class members; (C)

12  the desirability or undesirability of concentrating the

13  litigation of the claims in the particular forum; and (D) the

14  likely difficulties in managing a class action."  <u>Id.</u>  The

15  parties settled this action prior to certification, making

16  factors (C) and (D) inapplicable.  <u>See</u> <u>Murillo</u>, 266 F.R.D. at

17  477.

18        Rule 23(b)(3) is concerned with the "vindication of the

19  rights of groups of people who individually would be without

20  effective strength to bring their opponents into court."  <u>Amchem</u>,

21  521 U.S. at 616-17.  When, as here, class members' individual

22  recovery is relatively modest, the class members' interests

23  generally favor certification.  <u>Zinser v. Accufix Res. Inst.,</u>

24  <u>Inc.</u>, 253 F.3d 1180, 1190-91 (9th Cir. 2001).  Accordingly, the

25  class action device appears to be the superior method for

26  adjudicating this controversy.

27             3.   <u>Rule 23(c)(2) Notice Requirements</u>

28         If the court certifies a class under Rule 23(b)(3), it

"must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D. 651, 657-58 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)).  Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454-55 (9th Cir. 1994).

Plaintiff's counsel has provided the court with a proposed notice to class members.  (See Docket No. 44-2 at 21-28.)  It explains the proceedings, defines the scope of the class, and explains what the settlement provides and how much each class member can expect to receive in compensation.  (See id. at 21-25.)  The notice further explains the opt-out procedure, the procedure for objecting to the settlement, and the date and location of the final approval hearing.  (See id. at 25-26.)

The content of the proposed notice therefore satisfies Rule 23(c)(2)(B).  See Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980), abrogated on other grounds by Evans v. Jeff D., 475 U.S. 717, 725-26 n.10 (1986))).

1    The parties have selected Phoenix Settlement
2 Administrators to serve as the settlement administrator.  (Docket
3 No. 44-2 at §§ 1.2, 7.1.)  Pursuant to the notice plan,
4 plaintiff's counsel provides that "using last known addresses
5 provided by defendant, the settlement administrator will send the
6 notice via first class U.S. mail to all settlement class
7 members."  (Docket No. 44 at 23 (cleaned up); see also Docket No.
8 44-2 at §§ 7.4.2-7.4.5 (same).)  Plaintiff's counsel adds that
9 "the settlement administrator will perform skip traces to obtain
10 the correct address of any settlement class members for whom the
11 notice is returned as undeliverable and shall attempt re-mailings
12 where new addresses are ascertained."  (Docket No. 44 at 23
13 (cleaned up).)

14    The court cautions counsel that a single mailed notice
15 is unlikely to suffice.  See Roes 1-2 v. SFBSC Mgmt., LLC, 944
16 F.3d 1035, 1045-46 (9th Cir. 2019).  The court thus advises that
17 class counsel undertake additional measures "reasonably
18 calculated, under all the circumstances," to apprise all class
19 members of the proposed settlement.  See id. at 1046-47.

20    Given these considerations, the court will grant the
21 parties' notice plan preliminary approval, notwithstanding its
22 concern about the parties' notice plan as set forth above.

23    B.    Preliminary Settlement Approval

24    After determining that the proposed class satisfies the
25 requirements of Rule 23(a) and (b), the court must determine
26 whether the terms of the parties' settlement appear "fair,
27 adequate, and reasonable."  See Hanlon, 150 F.3d at 1025-26
28 (citing Fed. R. Civ. P. 23(e)(2)).  This process requires the

court to "balance a number of factors," including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Id. at 1026 (cleaned up).

Because some of these factors cannot be considered until the final fairness hearing, at the preliminary approval stage, "the court need only determine whether the proposed settlement is within the range of possible approval." See Murillo, 266 F.R.D. at 479. In other words, the court must resolve any "glaring deficiencies" in the settlement agreement before authorizing notice to class members. See Ontiveros, 2014 WL 3057506, at *11-12. This analysis requires consideration of "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." Murillo, 266 F.R.D. at 479. Courts often begin by examining the process that led to the settlement's terms to ensure that those terms are "the result of vigorous, arms-length bargaining" and then turn to the substantive terms of the agreement. See id. at 479-80.

### 1. Negotiation of the Settlement Agreement

On January 23, 2024, the parties stipulated to stay the case pending mediation, which the court approved within two days.

1    (See Docket Nos. 35-38.)  The mediation with Phillip K. Cha

2    occurred on May 21, 2024.  (Docket No. 44-1 at ¶¶ 2, 5.)  In that

3    time, the parties began extensive "negotiation and discussions

4    regarding the strengths and weaknesses of plaintiff's claims and

5    defendants' defenses."  (Id. at ¶ 6.)  Plaintiff's counsel

6    represents that the parties' settlement negotiations were

7    "adversarial" and conducted "at arms-length."  (See Docket No.

8    44-1 at ¶¶ 5-6.)

9           Given the parties' representation that the settlement

10   reached was the product of arms-length bargaining following

11   thorough informal discovery, the court at this stage does not

12   question that the proposed settlement is the result of informed

13   and non-collusive negotiations between the parties.  See La Fleur

14   v. Med. Mgmt. Int'l, Inc., No. 13-cv-00398, 2014 WL 2967475, at

15   *4-5 (C.D. Cal. June 25, 2014).

16              2.   Amount Recovered and Distribution

17          In determining whether a settlement agreement is

18   substantively fair to the class, the court must balance the value

19   of expected recovery against the value of the settlement offer.

20   See Ontiveros, 2014 WL 3057506, at *14.  This inquiry may involve

21   consideration of the uncertainty class members would face if the

22   case were litigated to trial.

23          "In determining whether the amount offered in

24   settlement is fair, the Ninth Circuit has suggested that the

25   Court compare the settlement amount to the parties' 'estimates of

26   the maximum amount of damages recoverable in a successful

27   litigation.'"  Litty v. Merrill Lynch & Co., No. CV 14-0425, 2015

28   WL 4698475, at *8-9 (C.D. Cal. Apr. 27, 2015) (quoting Glass v.

1  UBS Fin. Servs., Inc., No. C-06-4068, 2007 WL 221862, at *4 (N.D.

2  Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452, 455-56 (9th Cir.

3  2009)).

4          Plaintiff faced numerous risks in the litigation,

5  including proving all elements of the claims, obtaining and

6  maintaining class certification, establishing liability, and the

7  cost of litigation on these issues.  (See id. at ¶¶ 24-28.)

8  Thus, plaintiff's counsel represents that the settlement and

9  resulting distribution "compensates settlement class members for

10 plaintiff's claims while avoiding the risk of continued

11 litigation."  (Id. at ¶¶ 22-23.)  Further, the anticipated

12 average recovery amount of $1,344.40 per class member is not

13 insubstantial.

14         In light of the risks associated with further

15 litigation and the relative strength of defendants' arguments and

16 defenses, the court finds that the projected value of the

17 settlement is within the range of possible approval such that

18 preliminary approval of the settlement is appropriate.  The court

19 further finds the method of determining the amount of recovery

20 for each class member claims to be adequate, as each class

21 member's individual share of the settlement is proportional to

22 how long he or she worked for defendant.

23         Counsel are cautioned that because this settlement was

24 reached prior to class certification, it will be subject to

25 heightened scrutiny before final approval is granted.  See In re

26 Apple Inc. Device Performance Litig., 50 F.4th 769, 782-83 (9th

27 Cir. 2022).  The recommendations of plaintiff's counsel will not

28 be given a presumption of reasonableness, but rather will be

1   subject to close review.  See id.  The court will particularly

2   scrutinize "any subtle signs that class counsel have allowed

3   pursuit of their own self-interests to infect the negotiations."

4   See id.

5           3.   Attorneys' Fees

6           If a negotiated class action settlement includes an

7   award of attorneys' fees, that fee award "must be evaluated in

8   the overall context of the settlement."  Monterrubio v. Best Buy

9   Stores, L.P., 291 F.R.D. 443, 455-56 (E.D. Cal. 2013) (England,

10  J.).  "Courts have an independent obligation to ensure that the

11  award, like the settlement itself, is reasonable, even if the

12  parties have already agreed to an amount."  In re Bluetooth

13  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011)

14  (cleaned up).

15          The settlement agreement provides that plaintiff's

16  counsel will seek a fee award not to exceed 33% of the common

17  settlement fund.  (See Docket No. 44-1 Ex. 1 at § 3.3.2.)  The

18  parties estimate this award to consist of $116,666.67 in

19  attorneys' fees and $17,000.00 in litigation expenses.  (Id.)  If

20  the court does not approve the fee award in whole or in part,

21  that will not prevent the settlement agreement from becoming

22  effective or be grounds for termination.

23          In deciding the attorneys' fees motion, the court will

24  have the opportunity to assess whether the requested fee award is

25  reasonable by multiplying a reasonable hourly rate by the number

26  of hours counsel reasonably expended.  See In re Bluetooth

27  Headset, 654 F.3d at 941-42.  As part of this lodestar

28  calculation, the court may consider factors such as the "level of

1  "success" or "results obtained" by plaintiff's counsel.  See id.

2  If the court, in ruling on the fees motion, finds that the amount

3  of the settlement warrants a fee award at a rate lower than what

4  plaintiff's counsel requests, then it will reduce the award

5  accordingly.  The court will therefore not evaluate the fee award

6  at length here in considering whether the settlement is adequate.

7       IT IS THEREFORE ORDERED that plaintiff's motion for

8  preliminary certification of a settlement class and preliminary

9  approval of the class action settlement (Docket No. 44) be, and

10  the same hereby is, GRANTED.

11       IT IS FURTHER ORDERED THAT:

12       (1)  The court certifies the following class for

13  purposes of settlement only: "all persons employed by defendant

14  in California and classified as hourly-paid or non-exempt

15  employees who worked for defendant from October 31, 2018, to

16  April 14, 2025."  (See Docket No. 44-2 at §§ 1.4, 1.11, 1.15.)

17       (2)  The court appoints Wilshire Law Firm, PLC, as class

18  counsel.

19       (3)  The court appoints plaintiff Jose Arellano as class

20  representative.

21       (4)  The court appoints Phoenix Settlement

22  Administrators as settlement administrator to perform such duties

23  as set forth in this order and the settlement agreement.  (See,

24  e.g., Docket No. 44-2 at §§ 1.2, 7.1.)

25       (5)  The court approves the class notice and the mailing

26  of the class notice to each settlement class member's last known

27  address, with appropriate skip tracing and mail forwarding for

28  notices returned as undeliverable, as specifically described in

19

1    the settlement agreement.  (See Docket No. 44-2.)

2             (6) Within fifteen (15) days of the issuance of this

3    Order, defendant shall provide the settlement administrator with

4    the class data, as specified in the settlement agreement.  (See

5    Docket No. 44-2 at § 4.2.)

6             (7) Within thirty (30) days of the court's order

7    granting final approval of the class settlement becoming final,

8    defendant will fully fund the gross settlement amount, and also

9    fund the amounts necessary to fully pay its share of payroll

10   taxes by transmitting the funds to the settlement administrator.

11   (See Docket No. 44-2 at §§ 4.3-4.4.)

12            (8) Within fourteen (14) days after funding of the

13   gross settlement amount, the settlement administrator shall mail

14   the class notice in the manner specified in the settlement

15   agreement.  (See Docket No. 44-2 at §§ 7.4.1-7.4.5.)

16            (9) Any request for exclusion from the settlement must

17   be postmarked no later than sixty (60) days after the class

18   notice is initially mailed to settlement class members, and that

19   request must be received by the settlement administrator to be

20   valid, except for settlement class members whose class notices

21   are returned as undeliverable and then mailed again to a

22   corrected/forwarding address will have an additional fourteen

23   (14) days beyond the response deadline has expired to fax, email,

24   or mail his or her request for exclusion from the settlement or

25   objection to the settlement.  (See Docket No. 44-2 at §§ 7.4.1-

26   7.4.5, 7.5.1-7.5.4, 7.7.1-7.7.3.)

27            (10) Any settlement class member who does not timely

28   and validly request exclusion from the settlement may object to

the settlement agreement.  Any objection must be in writing, and
must be faxed, mailed, or emailed to the settlement
administrator.  Such objection shall include the name and address
of the settlement class member and the basis of the objection and
must be signed by the settlement class member.  To be timely, the
objection must be postmarked no later than sixty (60) days after
the class notice is initially mailed to class members except for
settlement class members whose class notices are returned as
undeliverable and then mailed again to a corrected address will
have an additional fourteen (14) days beyond the response
deadline has expired to fax, email, or mail his or her objection
to the settlement.  Any settlement class member who does not
timely submit such a written objection will not be permitted to
raise such objection, except for good cause shown, and any
settlement class Member who fails to object in the manner
prescribed by this order will be deemed to have waived, and will
be foreclosed from raising, any such objection.  (See Docket No.
44-2 at §§ 7.4.1-7.4.5, 7.5.1-7.5.4, 7.7.1-7.7.3.)

(11) The final approval hearing will be held on **January
5, 2026, at 1:30 p.m.,** to consider the fairness, adequacy, and
reasonableness of the proposed settlement preliminarily approved
by this order, and to consider the motion of class counsel for an
award of reasonable attorneys' fees and costs as well as the
class representative enhancement award.

(12) Briefs for the final approval hearing shall be
served and filed in accordance with the following briefing
schedule: plaintiff's motion for attorneys' fees and costs is due
on or before **December 8, 2025;** plaintiff's motion for final

1  approval of the settlement and for class representative

2  enhancement awards is due on or before **December 8, 2025;**

3  defendants' declaration attesting that CAFA notice has been

4  properly served pursuant to 28 U.S.C. § 1715 is due on or before

5  **December 22, 2025;** and any reply briefs are due on or before

6  **December 22, 2025.**

7  　　　　(13) Any party to this case, including any settlement

8  class member, may be heard in person or by counsel, to the extent

9  allowed by the court, in support of, or in opposition to, the

10  court's determination of the good faith, fairness,

11  reasonableness, and adequacy of the proposed settlement, the

12  requested attorneys' fees and costs, the requested class

13  representative enhancement awards, and any order of final

14  approval and judgment regarding such settlement, fees, costs, and

15  payments; provided however, that no person shall be heard in

16  opposition to such matters unless such person has complied with

17  the conditions set forth in the class notice. (See Docket No.

18  44-2 at § 7.7.2.)

19  　　　　(14) Pending further order of this court, all

20  proceedings in this matter except those contemplated herein and

21  in the settlement agreement are STAYED.

22  Dated:  April 14, 2025

23  WILLIAM B. SHUBB

24  UNITED STATES DISTRICT JUDGE

25

26

27

28