Tyler Woods (SBN 232464)
tyler.woods@wilshirelawfirm.com
Alan Wilcox (SBN 287476)
alan.wilcox@wilshirelawfirm.com
Lucy Nguyen (SBN 338783)
lucy.nguyen@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ARELLANO, individually, and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE J.M. SMUCKER COMPANY, a corporation; SMUCKER NATURAL FOODS, INC., a corporation; SMUCKER NATURAL FOODS, LLC, a limited liability company; SMUCKER FOODSERVICE, INC., a corporation; SMUCKER FRUIT PROCESSING CO., a corporation; SMUCKER RETAIL FOODS, INC., a corporation; SMUCKER SALES AND DISTRIBUTION COMPANY, a corporation; FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY LLC, a limited liability company; FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC. a corporation; SMUCKER FRUIT PROCESSING, COMPANY, a corporation; TRUROOTS, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.  2:23-cv-01540-WBS-DMC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          January 5, 2026<br>Time:          1:30 p.m.<br>Courtroom.:   5<br>Judge:          Hon. William B. Shubb |

1

## NOTICE OF MOTION AND MOTION

2

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

**PLEASE TAKE NOTICE** that on January 5, 2026 at 1:30 p.m.., in Courtroom 5 of the

4

United States District Court for the Eastern District of California, located at 501 I Street, Suite 4-

5

200, 14th Floor, Sacramento, CA 95814, Plaintiff Jose Arellano ("Plaintiff") will, and hereby does

6

move for an order approving Motion for Final Approval of Class Action Settlement against

7

Defendants The J.M. Smucker Company, Smucker Natural Foods, Inc., Smucker Natural Foods,

8

LLC, Smucker Foodservice, Inc., Smucker Fruit Processing Co., Smucker Retail Foods, Inc.,

9

Smucker Sales and Distribution Company, Fidelity Investments Institutional  Operations

10

Company LLC, and  Fidelity  Investments  Institutional  Operations  Company,  Inc.,

11

("Defendants").   The proposed settlement is set forth in the accompanying Class Action

12

Settlement Agreement and Class Notice ("Settlement Agreement") attached as Exhibit 1 to the

13

Declaration of Tyler J. Woods ("Woods Decl.") filed in support of this Motion.

14

This Motion will be based on this notice, the accompanying Memorandum of Points and

15

Authorities, the Declarations of Tyler J. Woods, Kevin Lee and Jose Arellano, and the complete

16

files and records in this action.

17

18

Dated: December 8, 2025                Respectfully submitted,

19

**WILSHIRE LAW FIRM, PLC**

20

21

By:   /s/ Tyler J. Woods

22

Tyler J. Woods
Alan Wilcox

23

Lucy Nguyen

24

Attorneys for Plaintiff

25

26

27

28

i

1

**TABLE OF CONTENTS**

2    NOTICE OF MOTION AND MOTION. ......................................................................... i

3    TABLE OF CONTENTS ................................................................................. iii, iv

4    TABLE OF AUTHORITIES.............................................................................. v, vi

5    MEMORANDUM OF POINTS AND AUTHORITIES………………………………………1

6    I.    INTRODUCTION............................................................................................ 1

7    II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 2

8        A.    Plaintiffs' Claims ............................................................................ 2

9        B.    Discovery and Investigation................................................................ 2

10        C.    Settlement Negotiations and Agreement.................................................. 3

11        D.    Preliminary Approval and Overwhelming Support for the Settlement.......................... 4

12        E.    Key Terms of the Proposed Settlement.................................................... 4

13    III.    THE SETTLEMENT MERITS FINAL APPROVAL ................................................. 6

14        A.    The Settlement Reflects a Reasonable Compromise .................................... 7

15        B.    The Settlement was Reached After Arms-Length Negotiations Following Formal

16            and Informal Discovery ................................................................... 7

17        C.    Plaintiff's Counsel Has Substantial Class Action Experience ...................................... 8

18        D.    There Are No Objections to the Settlement ................................................ 8

19    IV.    THE COURT SHOULD AWARD PLAINTIFFS THE REQUESTED AMOUNTS OF

20        FEES, COSTS AND ENHANCEMENT PAYMENTS. ................................................. 9

21        A.    A Fee Award Based on One-Third of the Common Fund is Standard ...................... 10

22        B.    While the Lodestar Method is Not Necessary in Common Fund Cases, Courts May

23            Perform a Cross-Check to Award Fees.................................................. 10

24            1.    Class Counsel's Rates Have Been Approved by Several Courts....................... 12

25            2.    Class Counsel's Requested Fees are Reasonable.............................. 12

26        C.    Costs Are Reasonable. .................................................................... 14

27        D.    The Enhancement Payments to the Plaintiff is Reasonable. ...................... 15

28        E.    Administration Expenses Should be Approved. .......................................... 16

ii

1

V.   CONCLUSION .......................................................................................................... 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1

<u>**TABLE OF AUTHORITIES**</u>

2

S<small>TATE</small> C<small>ASES</small>

3

*Cellphone Term. Fee Cases* (2010)
    186 Cal. App. 4th 1380 ...........................................................................16

4

*Chavez v. Netflix, Inc.* (2008)

5

    162 Cal.App.4th 43 ..................................................................10, 13

6

*Clark v. Am. Residential Services LLC* (2009)
    175 Cal. App. 4th 785 ...........................................................................16

7

8

*Dunk v. Ford Motor Co.* (1996)
    48 Cal.App.4th 1794 .............................................................................6

9

*Gentry v. Super. Ct.* (2007) 42 Cal.4th 443 ...........................................15

10

*In re Consumer Privacy Cases* (2009)

11

    175 Cal.App.4th 545 ...........................................................................11

12

*Ketchum v. Moses* (2001)
    24 Cal.4th 1122 ............................................................................12, 13

13

14

*Kullar v. Foot Locker Retail, Inc.* (2008)
    168 Cal.App.4th 116 .........................................................................6, 8

15

*Lealao v. Beneficial California, Inc.* (2000)

16

    82 Cal.App.4th 19 ...............................................................................12

17

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010)
    186 Cal.App.4th 399, 412 ..................................................................15

18

*Neary v. Regents of Univ. of California* (1992)

19

    3 Cal.4th 272 .........................................................................................6

20

*Raining Data Corp. v. Barrenechea* (2009)

21

    175 Cal.App.4th 1363 .........................................................................11

22

*United Steelworkers of America v. Phelps Dodge Corp.* (1990)
    896 F.2d 403 ........................................................................................12

23

24

*Wershba v. Apple Computers, Inc.* (2001)
    91 Cal.App.4th 224 ...................................................................6, 7, 12

25

26

F<small>EDERAL</small> C<small>ASES</small>

27

*Barbosa v. Cargill Meat Solutions Corp.*

28

    (E.D.Cal.2013) 297 F.R.D. 431 .........................................................11

*Beaver v. Tarsadia Hotels*
(S.D. Cal. Sept. 28, 2017) 2017 WL 4310707 .......................................................................10

*Frank v. Eastman Kodak Co.*
(W.D.N.Y. 2005) 228 F.R.D. 174 .........................................................................................15

*Hanlon v. Chrysler Corp.*
(9th Cir.1998) 150 F.3d 1011 ..................................................................................................9

*Harris v. Marhoefer*
(9th Cir. 1994) 24 F.3d 16 .....................................................................................................14

*Hughes v. Microsoft Corp.*
(W.D.Wash. 2001) 2001 U.S. Dist. LEXIS 5976, 2001 WL 34089697 ...................................9

*In re Lifelock, Inc. Marketing and Sales Practices Litigation*
(D. Ariz. 2010) 2010 WL 3715138 ...........................................................................................8

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir.1998) 148 F.3d
283 ........................................................................................................................................11

*Moreno v. Pretium Packaging, L.L.C.*
(C.D. Cal. Aug. 6, 2021) No. 8:19-cv-02500-SB, 2021 WL 3673845...............................12, 16

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*
(S.D. Cal. 2017) 292 F. Supp. 3d 1018 ..................................................................................14

*Rodriguez v. W. Publ'g Corp*. (9th Cir. 2009) 563 F.3d 948 .......................................................15

*Rutti v. Lojack Corp.*
(C.D. Cal. July 31, 2012) No. CV 06–00350 DOC, 2012 WL 3151077...................................15

*Van Vranken v. Atlantic Richfield Company*
(N.D. Cal. 1995) 901 F. Supp. 294....................................................................................10, 12

TREATISES
Conte & Newberg, *Newberg on Class Actions* (3rd Ed.) § 14.03.) ..............................................10

OTHER SOURCES
Theodore Eisenberg & Jeffrey P. Miller, "Incentive Awards to Class Action Plaintiffs: An
Empirical Study", 53 UCLA L. Rev. 1303 (2006) ...................................................................16

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Jose Arellano ("Plaintiff") seeks final approval of a proposed $350,000.00 non-reversionary, wage and hour class action settlement with Defendants The J.M. Smucker Company, Smucker Natural Foods, Inc., Smucker Natural Foods, LLC, Smucker Foodservice, Inc., Smucker Fruit Processing Co., Smucker Retail Foods, Inc., Smucker Sales and Distribution Company, Fidelity Investments Institutional  Operations Company LLC, and Fidelity Investments Institutional Operations Company, Inc. ("Defendants", and together with Plaintiff, the "Parties").  The Settlement will provide substantial monetary payments to approximately 152 class members.

The proposed settlement satisfies all the criteria for settlement approval under California law.  A presumption of fairness exists as the Settlement was reached through extensive, mediated arm's-length negotiations, sufficient investigation and discovery, which allowed Class Counsel to act intelligently, and Class Counsel is experienced in similar wage and hour litigation.  Upon the Court's approval of the settlement, participating class members will receive an ***average estimated individual <u>net</u> settlement payment of approximately $1,765.54***, with the ***highest individual estimated <u>net</u> settlement payment to be paid of approximately $3,323.45*** (Declaration of Kevin Lee, of Phoenix Settlement Administrators, in support of Motion for Final Approval of Class Action Settlement ["Lee Decl."], ¶ 13.)  As of filing this Motion for Final Approval of Class Action Settlement (the "Motion"), there **no objections to the settlement** and **no requests for exclusion**.  (*Id.* at ¶¶ 9-10.)  Thus, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members.

Final approval of the settlement is warranted as it satisfies all the criteria for approval under California law.  As demonstrated in the Motion for Preliminary Approval of Class Action Settlement, the proposed Settlement provides excellent benefits to the class, particularly considering the complexities and risks of the case.  Accordingly, Plaintiff requests that the Court grant final approval of the proposed Settlement.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Plaintiffs' Claims

On April 28, 2023, Plaintiff filed a putative wage-and-hour class action in Butte County on behalf of himself and all hourly-paid, non-exempt employees in California against Defendants The J.M. Smucker Company, Smucker Natural Foods, Inc., Smucker Natural Foods, LLC, Smucker Foodservice, Inc., Smucker Fruit Processing Co., Smucker Retail Foods, Inc., Smucker Sales and Distribution Company, Fidelity Investments Institutional Operations Company LLC, and Fidelity Investments Institutional Operations Company, Inc. for: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to produce requested employment records; and (8) violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* (Woods Decl., ¶ 3.) On May 15, 2023, Plaintiff filed a First Amended Complaint against Defendants adding Defendants Smucker Fruit Processing Company and TruRoots, LLC as named Defendants. On July 25, 2023, Plaintiff filed a Request for Dismissal, dismissing Defendants Fidelity Investments Institutional Operations Company LLC and Fidelity Investments Institutional Operations Company, Inc. (*Id.*)

On July 27, 2023, Defendants removed this matter to federal court on the basis of diversity jurisdiction. (Woods Decl., ¶ 4.) Plaintiff was unsuccessful in remanding the case back to state court. On November 18, 2023, the Parties filed a Joint Stipulation to Dismiss Smucker Defendants, dismissing Defendants The J.M. Smucker Company, Smucker Natural Foods, Inc., Smucker Natural Foods, LLC, Smucker Foodservice, Inc., Smucker Fruit Processing Co., Smucker Retail Foods, Inc., Smucker Sales and Distribution Company, and Smucker Fruit Processing Company. (*Id.*)

### B.    Discovery and Investigation

Following the filing of the initial complaint, the Parties exchanged documents and information before mediating this action. (Woods Decl., ¶ 5.) Defendants produced a sample of

time and pay records for the class members.  *(Id.)* Defendants also provided employee handbooks outlining its wage and hour policies and practices during the class period and information regarding the total number of current and former employees in its informal discovery responses.  (*Id.*)

After reviewing documents regarding Defendants' wage and hour policies and practices and analyzing Defendant's timekeeping and payroll records, Class Counsel was able to evaluate the probability of class certification, success on the merits, and Defendants' maximum monetary exposure for all claims.  (Woods Decl., ¶ 6.)  Class Counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation.  (*Id.*)  Class Counsel reviewed these records and prepared a damage analysis assessing Defendant's potential liability prior to mediation.  (*Id.*)

**C.  Settlement Negotiations and Agreement**

On May 21, 2024, the Parties participated in private mediation with experienced class action mediator, Phillip K. Cha, Esq.  (Woods Decl., ¶ 7.)  The mediation was conducted via Zoom.  The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial.  The Parties went into mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their position through trial and appeal if a settlement had not been reached. (*Id*.)

After extensive litigation, negotiations, and discussions regarding the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, the Parties were able to reach a settlement the material terms of which are encompassed within the Settlement Agreement. (*Id.*, **Ex. 1** [Class Action Settlement Agreement and Class Notice].) To be clear, and to comply with Federal Rules of Civil Procedure rule 23(e)(3), the Settlement agreement states all of the terms of the agreement between the Parties regarding the potential resolution of this matter.  Class Counsel belies that the proposed settlement if fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances, the risk of significant delay, the defenses that could be asserted by Defendants both to certification and on the merits, trial risk, and appellate risk.. (*Id.* at ¶ 8.)

Class Counsel has conducted a thorough investigation into the facts of this case.  Based

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS REPRESENTATIVE SERVICE PAYMENT

on the foregoing discovery and their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances, the risk of significant delay, the defenses that could be asserted by Defendant both to certification and on the merits, trial risk, and appellate risk.  (Woods Decl., ¶ 9.)

### D.    Preliminary Approval and Overwhelming Support for the Settlement

Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement on February 28, 2025.  (Woods Decl., ¶ 10.)  The Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement on April 14, 2025.  The deadline for class members to opt out or object to the Settlement was July 28, 2025.  The reaction of the Class to the settlement so far has been overwhelmingly positive.  Indeed, as of the filing of the Motion, no Class Members have opted out of the settlement and no Class Member has objected to the settlement.  (*Id*.)

### E.    Key Terms of the Proposed Settlement

Under the Settlement Agreement, Defendants will pay $350,000.00 to resolve this litigation.  The key terms include:

1.    Settlement Class: For purposes of this Settlement Agreement only, the Parties agree to the certification of the classes pursuant to California Code of Civil Procedure § 382 defined as: "means all persons employed by Defendant in California and classified as hourly-paid or non-exempt employee who worked for Defendant during the Class Period." (Settlement, § 1.4.)

2.    Gross Settlement Amount: "means $350,000.00, which is the total amount Defendant agrees to pay under the Settlement except as provided in Paragraph 9 below. The Gross Settlement Amount will be used to pay Individual Class Payments, Class Counsel Fees, Class Counsel Expenses, Class Representative Service Payment and the Administrator's Expenses." (Settlement, § 1.21.)

3.    Distribution of Settlement Payments: "An Individual Class Payment calculated by: (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all

4

1  Participating Class Members during the Class Period; and (b) multiplying the result by each
2  Participating Class Member's Workweeks." (Settlement, § 3.2.4.)

3      4.    <u>Release by Participating Class Members</u>: "All Participating Class Members, on
4  behalf of themselves and their respective former and present representatives, agents, attorneys,
5  heirs, administrators, successors, and assigns, release Released Parties from any and all claims
6  asserted or that could have been asserted based on the facts pled in the operative complaints,
7  including but not limited to, state wage and hour claims for any and all violations of California's
8  Labor Code and Unfair Competition Law based on Defendant's failure to pay for all hours
9  worked (including minimum, straight time, and overtime wages), failure to provide meal
10  periods, failure to authorize and permit rest periods, failure to timely pay final wages at
11  termination, failure to furnish accurate itemized wage statements, and failure to indemnify
12  employees for expenditures based on the alleged Labor Code violations, and all damages,
13  interest, penalties, attorneys' fees, costs, and other amounts recoverable under said causes of
14  action under California law, to the extent permissible, including, but not limited to, the
15  California Labor Code and the applicable Wage Orders. Except as set forth in Section 5.3 of
16  this Agreement, Participating Class Members do not release any other claims, including claims
17  for vested benefits, wrongful termination, violation of the Fair Employment and Housing Act,
18  unemployment insurance, disability, social security, workers' compensation, or claims based on
19  facts occurring outside the Class Period." (Settlement, § 5.2.)

20      5.    <u>Tax Allocation</u>: "20% of each Participating Class Member's Individual Class
21  Payment will be allocated to settlement of wage claims (the "Wage Portion"). The Wage
22  Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The remaining
23  80% of each Participating Class Member's Individual Class Payment will be allocated to
24  settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-Wage
25  Portions are not subject to wage withholdings and will be reported on IRS 1099 Forms.
26  Participating Class Members assume full responsibility and liability for any employee taxes
27  owed on their Individual Class Payment." (Settlement, § 3.2.4.1.)

28      6.    <u>Attorneys' Fees and Costs:</u> The settlement provides that Class Counsel may seek

5

up to 33-1/3% ($116,666.67) of the $350,000.00 gross settlement fund for attorneys' fees, and up to $17,000.00 for their actual litigation expenses incurred. (Settlement, § 3.2.2.)

7.    Enhancement Awards to Class Representative: The Settlement provides for an Enhancement Award of $5,000 to the Class Representative, Plaintiff Jose Arellano, in recognition of their efforts on behalf of the Class. (Settlement, § 3.2.1.)

8.    Settlement Administration Costs: The Parties have agreed to use Phoenix Settlement Administrators as the settlement administrator, with administration fees capped at $7,000.00. (Settlement, § 3.2.3.)

## III.    THE SETTLEMENT MERITS FINAL APPROVAL

The law favors the settlement of lawsuits, particularly in class actions and other complex cases. (*See e.g., Neary v. Regents of Univ. of California* (1992) 3 Cal.4th 272, 277-81.)  Factors to be considered in evaluating a class action settlement include "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through proceedings, the experience and views of counsel, the presence of a government participant, and the reaction of the class members to the proposed settlement." (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 128.)  A presumption that a settlement is fair and reasonable exists where, as here, the following four factors are present: "(l) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Wershba v. Apple Computers, Inc.* (2001) 91 Cal.App.4th 224, 245.)

Whether a class action settlement should be approved is a question committed to the trial court's broad discretion.  (*Id.* at pp. 234-35.)  In exercising its discretion, the Court should give "[d]ue regard ...to what is otherwise a private consensual agreement between the parties." (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801.)  "The inquiry 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (*Id*. [internal citations omitted].)

### A.    The Settlement Reflects a Reasonable Compromise

A settlement is not judged against what the plaintiff might recover had he or she prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable.  (*Wershba, supra,* 91 Cal.App.4th at pp. 246, 250 ["Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation."].)

The settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiffs' claims.  (Woods Decl., ¶ 11.)  While Plaintiff is confident in the merits of his claims, a legitimate controversy exists as to each cause of action.  (*Id.*)  Plaintiff also recognizes that proving the amount of wages due to each class member would be an expensive, time-consuming, and uncertain proposition.  (*Id.*)  Furthermore, even if Plaintiff obtained certification of all or some of the claims, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and reduce any recovery by the class.  (*Id.*)

Because of the proposed Settlement, class members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment.  When considering the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, it is clear that the settlement amount of $350,000.00 is within the "ballpark" of reasonableness, and settlement approval is appropriate. ***Indeed, each Settlement Class Member is eligible to receive an average benefit of approximately $1,765.54, and the highest estimated net payout is expected to be approximately $3,323.45.***  (Lee Decl., ¶ 13.)

### B.    The Settlement was Reached After Arms-Length Negotiations Following Formal and Informal Discovery

The Settlement was reached over the course of a full-day mediation with experienced employment mediator, Phillip K. Cha, Esq. (Woods Decl., ¶ 7.)  The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial.  (*Id.*)  The

Parties went into the mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their or its position through trial and appeal if a settlement had not been reached. (*Id.*)

## C.    Plaintiff's Counsel Has Substantial Class Action Experience

Class Counsel also has considerable experience and has demonstrated competence with litigating wage and hour class actions. (Woods Decl., ¶¶ 27-40.) Class Counsel has substantial experience in all facets of litigation in state and federal court, including discovery, law and motion, trial, appeals, arbitration and mediation. Class Counsel has litigated numerous class actions on behalf of plaintiffs and have been lead counsel or otherwise exercised significant case handling responsibilities in numerous cases resulting in millions of dollars in class action settlements. (*Id.*)

Based on Class Counsel's experience as employment and class action attorneys, Class Counsel is eminently qualified to evaluate the strength of Plaintiff's claims, the strength of Defendants' defenses against certification, the strength of Defendant's defenses on the merits, and the fairness of the Settlement. Their opinion that final approval of the Settlement would be in the best interests of class members in light of the significant risks of litigation is entitled to great weight. (*See Kullar, supra,* 168 Cal.App.4th at p. 129 ["The court undoubtedly should give considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in assuring itself that a settlement agreement represents an arms' length transaction entered without self-dealing or other potential misconduct"].)

## D.    There Are No Objections to the Settlement

To date, no class member has objected to the Settlement, and no class members has requested exclusion from the Settlement. (Lee Decl., ¶¶ 9-10.) The overwhelmingly positive response of the class strongly supports final approval of the Settlement. (*See, e.g., In re Lifelock, Inc. Marketing and Sales Practices Litigation* (D. Ariz. 2010) 2010 WL 3715138, *6 [relatively few objections and requests for exclusion support approval].)

Factors to be considered in evaluating a class action settlement include "the reaction of the class members to the proposed settlement." (*Kullar, supra,* 168 Cal.App.4th at p. 128.) The reaction here has been overwhelmingly positive. Courts have approved class action settlements in

8

lesser circumstances.  (*See, e.g., Hughes v. Microsoft Corp.* (W.D.Wash. 2001) 2001 U.S. Dist. LEXIS 5976, 2001 WL 34089697, \*8  [court found that the "class members overwhelmingly support[ed] the settlement" where there were over 37,000 notices sent out, 2,745 class members participated in the settlement, "only nine objections were submitted", and there were 86 timely opt-outs and over 20 additional defective or untimely opt-outs, "these indicia of the approval of the class of the terms of the settlement support a finding of fairness under Rule 23"], *citing Hanlon v. Chrysler Corp.* (9th Cir.1998) 150 F.3d 1011, 1027 [despite vigorous objections and appeal by objectors, the "fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness," and the court did not abuse its discretion in approving settlement].)

## IV.    THE COURT SHOULD AWARD PLAINTIFFS THE REQUESTED AMOUNTS OF FEES, COSTS AND ENHANCEMENT PAYMENTS.

Under the Settlement, subject to the Court's approval, Defendant has agreed to pay Class Counsel reasonable attorneys' fees in the amount of $116,666.67, which is 33% of the Gross Settlement Amount, costs up to $17,000.00 for litigating this action, and enhancement award of $5,000.00 to named Plaintiff Jose Arellano.  Defendants have also agreed that it would not oppose an application for these payments addressed above, and no class member has objected to these amounts.

In common fund cases like this one, the primary method California courts use for calculating attorneys' fees is the percentage of the common fund method, which may be followed by a lodestar cross-check.  In *Laffitte v. Robert Half Int'l Inc.* (2016) 1 Cal.5th 480, the California Supreme Court affirmed an award of 33 1/3% of a $19 million wage and hour class action settlement with a 2.03 to 2.13 multiplier.  (*Id.* at p. 506.)  In doing so, the California Supreme Court explained:

> As to the incentives a lodestar cross-check might create for class counsel, we emphasize the lodestar calculation, when used in this manner, ***does not override the trial court's primary determination of the fee as a percentage of the common fund*** and thus ***does not impose an absolute maximum or minimum on the potential fee award***. If the multiplier calculated by means of a lodestar cross-check is extraordinarily high or low, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a

9

justifiable range, but the court is not necessarily required to make such an adjustment. Courts using the percentage method have generally weighed the time counsel spent on the case as an important factor in choosing a reasonable percentage to apply.

(*Id.* at p. 505, emphasis added; *see also Beaver v. Tarsadia Hotels* (S.D. Cal. Sept. 28, 2017) 2017 WL 4310707, at *9 [applying *Laffitte* standard to fee request for 33 1/3% of common fund].)

### A.    A Fee Award Based on One-Third of the Common Fund is Standard

According to a leading treatise on class actions, "[n]o general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented."  (*See* Conte & Newberg, *Newberg on Class Actions* (3rd Ed.) § 14.03.) Attorneys' fees at fifty percent of the fund are typically considered the upper limit, with **thirty to forty percent** commonly awarded in cases where the settlement is relatively small.  (*Id.*; *see also Van Vranken v. Atlantic Richfield Company* (N.D. Cal. 1995) 901 F. Supp. 294 [stating that most cases where 30-50% was awarded involved "smaller" settlement funds of under $10 million].)

The settled-for 33% fee award is consistent with the average fee award in class actions. Indeed, the custom and practice in class actions is to award approximately one-third of a fund as a fee award.  (*See Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 66, n.11 ["Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."].)  Thus, Plaintiffs' fee request is in line with the prevailing guidelines established in California case law and academic literature and is consistent with awards in California.  Accordingly, the Court should approve the attorneys' fees requested herein.

### B.    While the Lodestar Method is Not Necessary in Common Fund Cases, Courts May Perform a Cross-Check to Award Fees.

Although California supports the common fund doctrine, the lodestar method can be used to cross-check fee awards.  "It may be appropriate in some cases, assuming the class benefit can be monetized with a reasonable degree of certainty, to "cross-check" or adjust the lodestar in

comparison to a percentage of the common fund to ensure that the fee awarded is reasonable and within the range of fees freely negotiated in the legal marketplace in comparable litigation." (*In re Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 557.)

Applying the lodestar method requires a two-step process. The first step is to multiply the number of hours reasonably expended by a reasonable hourly rate. The second step is to apply a multiplier to the lodestar to take into account various factors. "The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Id.* at pp. 556-57.) "Under certain circumstances, a lodestar calculation may be enhanced on the basis of a percentage-of-the-benefit analysis." (*Id.* at p. 557.)

Detailed timesheets are not necessary to a lodestar cross-check. "The law is clear ... that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.) As the California Supreme Court explained in *Laffitte*:

> With regard to expenditure of judicial resources, we note that trial courts conducting lodestar cross-checks have generally not been required to closely scrutinize each claimed attorney-hour, but have instead used information on attorney time spent to "focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."
>
> (5 Newberg on Class Actions, *supra*, § 15:86, p. 331; *see, e.g., Goldberger v. Integrated Resources, Inc., supra*, 209 F.3d at p. 50 [2d Cir.; "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"]; *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir.1998) 148 F.3d 283, 342 [agreeing with district court that "detailed time summaries were unnecessary where, as here, it was merely using the lodestar calculation to double check its fee award."]; *Barbosa v. Cargill Meat Solutions Corp.* (E.D.Cal.2013) 297 F.R.D. 431, 451 ["Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours."].)

(*Laffitte, supra,* 1 Cal.5th at p. 505.)

Class Counsel's lodestar is at least $118,840.00 based on over 119.1 hours of work performed thus far. (Woods Decl., ¶¶ 18-19.) Accordingly, the requested fee of $116,666.67 is reasonable and fair as it is based on an approximate multiplier of 0.98. To be sure, trial courts

11

have substantial discretion in adjusting the lodestar to account for various factors.  (*See Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26, 39-45; *see also Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)  In addition, it has been held that "[m]ultipliers can range from 2 to 4 or even higher."  (*See Wershba*, *supra,* 91 Cal.App.4th at p. 255; *see also Van Vranken*, *supra,* 901 F. Supp. At p. 298 ["[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."].)  Similar multipliers have been found to be reasonable for Class Counsel.  (*See, e.g., Moreno v. Pretium Packaging, L.L.C.* (C.D. Cal. Aug. 6, 2021) No. 8:19-cv-02500-SB, 2021 WL 3673845, *3 [finding Wilshire Law Firm, PLC's multiplier of 0.98 reasonable "in light of the contingent nature of recovery, the complexity of the issues, and the result obtained"].)

### 1.    Class Counsel's Rates Have Been Approved by Several Courts.

Class Counsel provides a declaration to support their lodestar hourly rates.  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  (*United Steelworkers of America v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F.2d 403, 407.)  Class Counsel has received final approval of their hourly rates in other wage and hour class action settlements.

### 2.    Class Counsel's Requested Fees are Reasonable.

Once this lodestar figure has been determined, the Court may take into account other "enhancement" factors to adjust the lodestar award. The overall reasonableness of Plaintiff's request is underscored by the fact that a significantly higher multiplier would be justified under applicable law.

Contingency fees should be higher than fees for the same legal services paid concurrently with the provision of the services.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132-33.)  "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases."  (*Id.* at p. 1133.) Application of that rule is particularly appropriate where the case is brought to redress important

rights of vulnerable persons.  (*Id.*)  A risk enhancement is "earned compensation; unlike a windfall, it is neither unexpected nor fortuitous.  Rather it is intended to approximate market-level compensation for such services which typically pay a premium for the risk of nonpayment or delay in payment of attorney's fees." (*Id.* at p. 1138.)

"Multipliers can range from 2 to 4 or even higher." (*Wershba*, *supra,* 91 Cal.App.4th at p. 255; *see also Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 512 [applying a 2.52 multiplier on a cross-check in an antitrust class action]; *Chavez, supra,* 162 Cal.App.4th at p. 60 [applying a 2.5 multiplier on a lodestar cross-check]; *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1051 n.6 ["most" common fund cases apply a multiplier of 1.0-4.0]; *Been v. O.K. Industries Inc.* (E.D. Okla. 2011) 2011 WL 4478766, *11, *citing* a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be "per se reasonable.")  The intermediate court in *Laffitte*, after finding that "2 to 4" is a reasonable range for multipliers on a cross-check, affirmed a 2.13 multiplier.  (*Laffitte v. Robert Half Int'l* (2014) 231 Cal.App.4th 860, 881-82.) The intermediate court opinion was affirmed in full by the California Supreme Court in its new decision guiding lower courts on assessing fees.

Factors considered in determining whether a lodestar multiplier is appropriate generally include: (1) the risks presented by the contingent nature of the case; (2) the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (3) the nature of the opposition; (4) the preclusion of other employment by the attorney due to acceptance of the case; and (5) the result obtained and the importance of the lawsuit to the public. (*Serrano, supra,* 20 Cal.3d at pp. 48-49.)  All of these factors favor approval of a multiplier along the lines of those approved in the cases above.

The major consideration in determining the necessity of a multiplier is the contingent nature of the award.  (*Ketchum, supra,* 24 Cal.4th at pp. 1132-33.)  Further, the possibility of no recovery is only one of the uncertainties involved in taking on such a case.  Other uncertainties are the amount that will be recovered, uncertainty as to the cost, both in effort and expenses, and uncertainty about how much time will pass before the recovery is obtained.  (*Id.* at pp. 1132-1133,

1138.) Here, Class Counsel have been the only counsel to represent Class Members in this matter and have borne the entire risk and costs of litigation purely on a contingency basis. Class Counsel's outlay of time and money in this case has been significant.

The other factors are also present here. Class Counsel are skilled attorneys who have had success in wage and hour class actions. This case required experienced and competent lawyers and expertise in the issues presented herein. Defendants' contentions underscore the risk of prevailing at class certification and trial, and any of these obstacles could have prevented recovery completely. Further, proceeding to trial would have added years to the resolution of this case because of the difficult legal and factual issues raised and the likelihood of appeals. Despite these risks, Class Counsel took this case on a contingency basis. Yet, there are only so many cases that Class Counsel can take at any one time. Consequently, there were other meritorious cases presented to Class Counsel that would have generated substantial fees, but were declined, during the pendency of this action in order to devote the attention necessary to achieve favorable results. (Woods Decl., ¶ 25.) Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery, the relief provided under the Settlement represents a very strong result for the Class.

**C.    <u>Costs Are Reasonable.</u>**

As of the date of filing this Motion, Class Counsel has incurred around $16,530.85 in costs, and Defendant has agreed that they will not oppose any cost award request up to $17,000.00. (Woods Decl., ¶ 26.) Accordingly, Class Counsel respectfully requests reimbursement of up to $17,000.00 in costs. The categories of costs are set forth in Exhibit 3 to the accompanying Declaration of Tyler J. Woods, and these costs are easily seen to be both reasonable and necessary.

Counsel can recover "out-of-pocket expenses that 'would normally be charged to a fee paying client'" including costs for "service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction." (*Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16, 19.) Such costs are properly recoverable on motions for settlement approval. (*See Nunez v. BAE Sys. San Diego Ship Repair Inc.* (S.D. Cal. 2017) 292 F. Supp. 3d 1018,

1057; *Rutti v. Lojack Corp.* (C.D. Cal. July 31, 2012) No. CV 06–00350 DOC, 2012 WL 3151077, at *12 ["Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."].)

### D. The Enhancement Payments to the Plaintiff is Reasonable.

Named plaintiffs in class action lawsuits "are eligible for reasonable incentive payments to compensate them for the expense or risk they have incurred in conferring a benefit on other members of the class." (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 412.)  Courts routinely grant approval of class action settlement agreements containing enhancements for the class representatives, which are necessary to provide incentive to represent the class, and are appropriate given the benefit the class representatives help to bring about for the class.  (*See Rodriguez v. W. Publ'g Corp*. (9th Cir. 2009) 563 F.3d 948, 958-59.)  The California Supreme Court has also noted that "retaliation against employees for asserting statutory rights under the Labor Code is widespread," despite anti-retaliation statutes designed to protect employees.  (*Gentry v. Super. Ct.* (2007) 42 Cal.4th 443, 460-61.)  Plaintiff should therefore be rewarded for assuming the risk of retaliation for the sake of class members.  (*See Frank v. Eastman Kodak Co.* (W.D.N.Y. 2005) 228 F.R.D. 174, 187.)

Under the settlement agreement, subject to the Court's approval, Defendants agreed to pay a Class Representative Service Payment in the amount of $5,000.00 to Plaintiff Jose Arellano. This amount is also in exchange for Plaintiff's general releases of all claims against Defendant. Plaintiff has submitted a declaration demonstrating his devotion to this case, including his efforts assisting counsel in the case, communicating with counsel frequently for litigation, preparing for mediation, and reviewing case-related documents.  (*See, generally,* Declaration of Plaintiff submitted in support of Motion for Final Approval.)

When compared with the amounts awarded in typical class action cases, the amount requested here is particularly reasonable.  Indeed, a **2006** study examining the average incentive award given to class action plaintiffs from **1993 to 2002** found that the "average award per class representative was $15,992 and the median award per class representative was $4,357." (Theodore

15

Eisenberg & Jeffrey P. Miller, "Incentive Awards to Class Action Plaintiffs: An Empirical Study", 53 UCLA L. Rev. 1303, 1308 (2006).)  Courts routinely approve a $10,000 enhancement award for plaintiffs represented by Class Counsel.  (*See, e.g., Moreno, supra,* 2021 WL 3673845 at *3 ["The Court concludes a $10,000 incentive award is appropriate."]; *Suarez, supra,* 2024 WL 150721 at p. *4 ["The court approves awards of $10,000 for each class representative."].)

"Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit." (*Clark v. Am. Residential Services LLC* (2009) 175 Cal.App.4th 785, 804.) "[T]he rationale for making enhancement or incentive awards to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." (*Id.* at p. 806.) "An incentive award is appropriate 'if it is necessary to induce an individual to participate in the suit.'" (*Cellphone Term. Fee Cases* (2010) 186 Cal.App.4th 1380, 1394, *quoting Clark*, 175 Cal.App.4th at p. 804.) The "criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." (*Id.* at pp. 1394–95.) Plaintiff's declaration describes how each of the five *Cellphone Termination* factors are present here.

**E.    Administration Expenses Should be Approved.**

Phoenix Settlement Administrators, the Settlement Administrator, estimates that it will incur a total of $7,000.00 in costs associated with the administration of this Settlement. (Lee Decl., ¶ 15.)  These expenses are reasonable, based upon the size of the class, claim and exclusion tracking, and Class Member payment processing.

///

///

///

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS REPRESENTATIVE SERVICE PAYMENT

1

## V.   <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiff respectfully request that the Court grant final approval

3

of the proposed settlement.

4

Dated: December 8, 2025                    Respectfully submitted,

5

**WILSHIRE LAW FIRM, PLC**

6

7

  /s/ Tyler J. Woods
_____

8

Tyler J. Woods
Alan Wilcox
Lucy Nguyen

9

Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
CLASS REPRESENTATIVE SERVICE PAYMENT