1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   JOSE ARELLANO, individually, and      No. 2:23-cv-1540 WBS DMC
     on behalf of all others
13   similarly situated,

14              Plaintiff,                  MEMORANDUM AND ORDER RE:
                                            PLAINTIFF'S MOTION FOR FINAL
15        v.                                APPROVAL OF CLASS ACTION
                                            SETTLEMENT, AND FOR
16   THE J.M. SMUCKER COMPANY, a            ATTORNEYS' FEES, COSTS, AND
     corporation; SMUCKER NATURAL          ENHANCEMENT PAYMENTS
17   FOODS, INC., a corporation;
     SMUCKER NATURAL FOODS, LLC, a
18   limited liability company;
     SMUCKER FOODSERVICE, INC., a
19   corporation; SMUCKER FRUIT
     PROCESSING CO., a corporation;
20   SMUCKER RETAIL FOODS, INC., a
     corporation; SMUCKER SALES AND
21   DISTRIBUTION COMPANY, a
     corporation; FIDELITY
22   INVESTMENTS INSTITUTIONAL
     OPERATIONS COMPANY LLC, a
23   limited liability company;
     FIDELITY INVESTMENTS
24   INSTITUTIONAL OPERATIONS
     COMPANY, INC., a corporation;
25   SMUCKER FRUIT PROCESSING
     COMPANY, a corporation;
26   TRUROOTS, LLC, a limited
     liability company; and DOES 1
27   through 10, inclusive,

28

                                1

1

2                        Defendants.

3                          ----oo0oo----

4              Jose Arellano ("plaintiff"), individually and on behalf

5     of similarly situated individuals, brought this putative class

6     action against defendants The J.M. Smucker Company; Smucker

7     Natural Foods, Inc.; Smucker Natural Foods, LLC; Smucker

8     Foodservice, Inc.; Smucker Fruit Processing Co.; Smucker Retail

9     Foods, Inc.; Smucker Sales and Distribution Co.; Fidelity

10    Investments Institutional Operations Co., LLC; Fidelity

11    Investments Institutional Operations Co., Inc.; and TruRoots,

12    LLC,[1] alleging violations of California wage and hour laws.  (See

13    Docket No. 1-4 Ex. A.)  Before the court is plaintiff's unopposed

14    motion for final approval of a class action settlement, and for

15    attorneys' fees, costs, and enhancement payments.[2]  (See Docket

16    No. 56.)  Defendant does not oppose the motion.  (See Docket No.

17

18         [1]    On November 18, 2023, the parties stipulated to
      voluntarily dismiss defendants The J.M. Smucker Company; Smucker
19    Natural Foods, Inc.; Smucker Natural Foods, LLC; Smucker
      Foodservice, Inc.; Smucker Fruit Processing Co.; Smucker Retail
20    Foods, Inc.; and Smucker Sales and Distribution Co.  (See Docket
      No. 34.)  Thus, defendant TruRoots, LLC ("defendant" or
21    "TruRoots") is the only defendant remaining.  (Cf. Docket No. 1-1
      at ¶¶ 3-4 & n.1 (explaining defendant's corporate structure).)
22         [2]    Plaintiff only filed a "Motion for Final approval of
      Class Action Settlement," and did not file a separate motion for
23    attorneys' fees, costs, and enhancement payments (see Docket No.
      56.); however, the court construes plaintiff's motion as being
24    for final approval of class settlement as well as for fees,
      costs, and payments.  This is because plaintiff's memorandum of
25    points and authorities frames those fees, costs, and payments as
      included within the terms of the settlement agreement now before
26    the court and also contains the kind of substantive analysis that
      would typically be filed separately in support of a stand-alone
27    motion for fees, costs, and payments.

28
                                      2

1    57.)

2              The Ninth Circuit has declared a strong judicial policy

3    favoring settlement of class actions.  Class Plaintiffs v. City

4    of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

5    Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

6    ("We put a good deal of stock in the product of an arms-length,

7    non-collusive, negotiated resolution[.]") (citation omitted).

8    Rule 23(e) provides that "[t]he claims, issues, or defenses of a

9    certified class may be settled . . . only with the court's

10   approval."  Fed. R. Civ. P. 23(e).

11             "Approval under 23(e) involves a two-step process in

12   which the Court first determines whether a proposed class action

13   settlement deserves preliminary approval and then, after notice

14   is given to class members, whether final approval is warranted."

15   Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

16   525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

17   § 30.41 (1995)).  This court satisfied step one by granting

18   plaintiffs' unopposed motion for preliminary approval of class

19   action settlement on April 15, 2025.  (Order Granting Prelim.

20   Approval (Docket No. 51).)  Now, following notice to the class

21   members, the court will consider whether final approval is

22   merited by evaluating: (1) the treatment of this litigation as a

23   class action and (2) the terms of the settlement.  See Diaz v.

24   Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir.

25   1989).

26   I.   Class Certification

27             The putative class consists of all current and former

28   hourly-paid or non-exempt employees who worked for defendant in

1  California between October 31, 2018, and April 14, 2025.

2  (Settlement Agreement ¶¶ 1.4, 1.11.)

3         To be certified, the putative class must satisfy the

4  requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

5  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

6         A.    Rule 23(a)

7         Rule 23(a) restricts class actions to cases where: "(1)

8  the class is so numerous that joinder of all members is

9  impracticable [numerosity]; (2) there are questions of law or

10  fact common to the class [commonality]; (3) the claims or

11  defenses of the representative parties are typical of the claims

12  or defenses of the class [typicality]; and (4) the representative

13  parties will fairly and adequately protect the interests of the

14  class [adequacy of representation]." See Fed. R. Civ. P. 23(a).

15         In the court's order granting preliminary approval of

16  the settlement, the court found that the putative class satisfied

17  the Rule 23(a) requirements. (See Order Granting Prelim.

18  Approval at 5-14.) The court is unaware of any changes that

19  would affect its conclusion that the putative class satisfies the

20  Rule 23(a) requirements, and the parties have not indicated that

21  they are aware of any such developments. The court therefore

22  finds that the class definition proposed by plaintiffs meets the

23  requirements of Rule 23(a).

24         B.    Rule 23(b)

25         After fulfilling the threshold requirements of Rule

26  23(a), the proposed class must satisfy the requirements of one of

27  the three subdivisions of Rule 23(b). Leyva, 716 F.3d at 512.

28  Plaintiffs seek certification under Rule 23(b)(3), which provides

4

1    that a class action may be maintained only if (1) "the court

2    finds that questions of law or fact common to class members

3    predominate over questions affecting only individual members" and

4    (2) "that a class action is superior to other available methods

5    for fairly and efficiently adjudicating the controversy."  Fed.

6    R. Civ. P. 23(b)(3).

7            In its order granting preliminary approval of the

8    settlement, the court found that both the predominance and

9    superiority prerequisites of Rule 23(b)(3) were satisfied.

10   (Order Granting Prelim. Approval at 10-12.)  The court is unaware

11   of any changes that would affect its conclusion that Rule

12   23(b)(3) is satisfied.  Because the settlement class satisfies

13   both Rule 23(a) and 23(b)(3), the court will grant final class

14   certification of this action.

15           C.   Rule 23(c)(2) Notice Requirements

16           If the court certifies a class under Rule 23(b)(3), it

17   "must direct to class members the best notice that is practicable

18   under the circumstances, including individual notice to all

19   members who can be identified through reasonable effort."  Fed.

20   R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

21   content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

22   651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

23   417 U.S. 156, 172-77 (1974)).  Although that notice must be

24   "reasonably certain to inform the absent members of the plaintiff

25   class," actual notice is not required.  Silber v. Mabon, 18 F.3d

26   1449, 1454 (9th Cir. 1994) (citation omitted).

27           The notice explains the proceedings, defines the scope

28   of the class, and explains what the settlement provides and how

5

much each class member can expect to receive in compensation.
(See Notice of Class Action Settlement (Docket No. 56-2 at 22-29)
at 20-27.)   The notice further explains the opt-out procedure,
the procedure for objecting to the settlement, and the date and
location of the final approval hearing.   (See id. at 25-26.)   The
content of the notice therefore satisfies Rule 23(c)(2)(B).   See
Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen.
Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory
if it 'generally describes the terms of the settlement in
sufficient detail to alert those with adverse viewpoints to
investigate and to come forward and be heard.'") (quoting Mendoza
v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

        The parties selected Phoenix Settlement Administrators
("Phoenix") to serve as the Settlement Administrator.  (See
Settlement Agreement (Docket No. 56-2) ¶ 7.1; see also Decl. of
Kevin Lee ("Lee Decl.") (Docket No. 56-7) ¶ 2.)   Defendant timely
provided Phoenix with the class contact information and data,
which included the name, last known address, Social Security
Number, dates of employment, and pertinent employment information
for each class member.  (See Lee Decl. (Docket No. 56-7) ¶ 3.)
The class list contained 116 members.  (Id.)   The Settlement
Administrator updated the mailing addresses using the National
Change of Address Database maintained by the U.S. Postal Service.
(Id. ¶¶ 4-5.)

        The Settlement Administrator delivered notice of the
settlement via mail on May 28, 2025.  (Id. ¶ 5.)   Eight notices
were returned as undeliverable.  (Id. ¶ 6.)   For those without a
forwarding address, the Settlement Administrator performed a skip

1   trace address search to locate updated addresses.  (Id.)  Of the

2   eight notices returned as undeliverable, eight notices were

3   remailed to new addresses.  (Id.)  Following these efforts, a

4   total of zero notices were ultimately undeliverable by mail.

5   (Id. ¶ 7.)  The Settlement Administrator received zero requests

6   for exclusion, zero objections, and zero workweek disputes.  (Id.

7   ¶¶ 8-11.)

8          The court appreciates the thorough efforts taken by the

9   Settlement Administrator to effectuate notice and is satisfied

10  that the notice procedure was "reasonably calculated, under all

11  the circumstances," to apprise all class members of the proposed

12  settlement.  See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,

13  1045-46 (9th Cir. 2019).

14  II.  Final Settlement Approval

15         Having determined that class treatment is warranted,

16  the court must now address whether the terms of the parties'

17  settlement appear fair, adequate, and reasonable.  See Fed. R.

18  Civ. P. 23(e)(2).  To determine the fairness, adequacy, and

19  reasonableness of the agreement, Rule 23(e) requires the court to

20  consider four factors: "(1) the class representatives and class

21  counsel have adequately represented the class; (2) the proposal

22  was negotiated at arm's length; (3) the relief provided for the

23  class is adequate; and (4) the proposal treats class members

24  equitably relative to each other."  Id.  The Ninth Circuit has

25  also identified eight additional factors the court may consider,

26  many of which overlap substantially with Rule 23(e)'s four

27  factors:

28         The strength of the plaintiff's case; the risk,

1
2
3
4
5

> expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

6   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

7       A.   Adequate Representation

8           The court must first consider whether "the class

9   representatives and class counsel have adequately represented the

10  class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

11  "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson

12  v. Libre Tech., Inc., No. 3:18-cv-1371 GPC KSC, 2020 WL 2467060,

13  at *5 (S.D. Cal. May 13, 2020) (quoting 4 Newberg on Class

14  Actions § 13:48 (5th ed.)); see also In re GSE Bonds Antitr.

15  Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting

16  similarity of inquiries under Rule 23(a)(4) and Rule

17  23(e)(2)(A)).

18          Because the Court has found that the proposed class

19  satisfies Rule 23(a)(4) for purposes of class certification, the

20  adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson,

21  2020 WL 2467060, at *5.

22      B.   Negotiation of the Settlement Agreement

23          Prior to mediation and settlement negotiations, counsel

24  engaged in thorough investigation of the claims and informal

25  discovery, including securing employee records and policy

26  documents, obtaining and reviewing defendant's wage and hour

27  practices, analyzing defendant's payroll and timekeeping records,

28  and preparing a damage analysis to assess defendant's potential

1  liability.  (See Decl. of Tyler J. Woods ("Woods Decl.") (Docket
2  No. 56-1) ¶¶ 5-6; see also Docket No. 56 at 8-9.)

3          On May 21, 2024, the parties participated in a full-day
4  private mediation over Zoom with an experienced class action
5  mediator.  (See Woods Decl. ¶ 7.)  Despite both sides entering
6  into mediation fully prepared to litigate this case should
7  negotiations fail, the parties were ultimately able to reach a
8  settlement.  (Id.)  The parties spent several months negotiating
9  the final terms of the Settlement Agreement, executing the
10  agreement on December 11, 2024.  (See Settlement Agreement at 18-
11  19 (Docket No. 56-2 at 19-20).)  Plaintiff's counsel represents
12  that the parties' settlement negotiations were "professional" yet
13  "adversarial," and were conducted "at arms-length."  (See Woods
14  Decl. ¶ 7.)

15          Given that the settlement reached was the product of
16  arms-length bargaining following extensive informal discovery and
17  with the help of an experienced mediator, this factor weighs in
18  favor of final approval.  See La Fleur v. Med. Mgmt. Int'l, Inc.,
19  No. 5:13-cv-00398, 2014 WL 2967475, at *4 (N.D. Cal. June 25,
20  2014) ("Settlements reached with the help of a mediator are
21  likely non-collusive.").  The court is satisfied that the outcome
22  of the negotiations was not infected by counsel's pursuit of
23  their own self-interests.  See In re Apple Inc. Device
24  Performance Litig., 50 F.4th 769, 782 (9th Cir. 2022).

25      C.  Adequate Relief

26          In determining whether a settlement agreement provides
27  adequate relief for the class, the court must "take into account
28  (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal. See Fed. R. Civ. P. 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

The court notes that, in evaluating whether the settlement provides adequate relief, it must consider several of the same factors outlined in Hanlon, including the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; and the amount offered in settlement. See Hanlon, 150 F.3d at 1026.

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). When a settlement was reached prior to class certification, it is subject to heightened scrutiny for purposes of final approval. See In re Apple Inc., 50 F.4th at 782. The recommendations of plaintiffs' counsel will not be given a presumption of reasonableness, but rather will be subject to close review. See id. at 782-83. The court will particularly scrutinize "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." See id. at 782 (quoting Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1043 (9th Cir. 2019)).

1          The Settlement Agreement includes a gross settlement

2     amount of $350,000.00, which includes the following: (1) a

3     $5,000.00 plaintiff incentive award for Jose Arellano, the lead

4     plaintiff; (2) maximum attorneys' fees of $116,666.67, or 33.33%

5     of the gross settlement amount, plus reasonable documented costs

6     up to $17,000.00; and (3) settlement administration costs of

7     approximately $7,000.00.  (See Settlement Agreement (Docket No. 56-

8     2) ¶¶ 3.1, 3.2.1, 3.2.2, 3.2.3.)

9          Plaintiff estimates that the claims are worth up to

10    $665,770.15.  (See Decl. of Molly Desario ("Desario Decl.") ¶ 21

11    (Docket No. 44-1).)  The portion of the gross settlement amount

12    allocated to class claims -- $204,802.48 -- constitutes

13    approximately 30.76% of the $665,770.15 maximum valuation.  This

14    amount is comfortably within the range of percentage recoveries that

15    California courts have found to be reasonable.  See Cavazos v. Salas

16    Concrete, Inc., No. 1:19-cv-00062 DAD EPG, 2022 WL 2918361, at *6

17    (E.D. Cal. July 25, 2022) (collecting cases).

18         Plaintiff faced numerous hurdles in the litigation,

19    including proving all elements of the claims, obtaining and

20    maintaining class certification, establishing liability, and the

21    costliness of litigation on these issues.  Plaintiff's counsel

22    represents that, given the strength of plaintiff's claims and

23    defendant's potential exposure, the settlement and resulting

24    distribution provides a strong result for the class.  (See Docket

25    No. 56 at 20.)

26         In light of the risks associated with further

27    litigation and the relative strength of defendant's arguments, the

28    court finds that the value of the settlement counsels in favor of

1    granting final approval.  The court further finds the method of

2    processing class member claims to be adequate.  Each class member's

3    individual share of the settlement is proportional to the number of

4    workweeks worked for defendant during the time period covered by

5    the Settlement Agreement.  The court is also satisfied that

6    counsel's requested fees are reasonable and support approval of the

7    settlement, which it will address in greater detail below.

8              D.    Equitable Treatment of Class Members

9              Finally, the court must consider whether the Settlement

10   Agreement "treats class members equitably relative to each

11   other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the court

12   determines whether the settlement "improperly grant[s]

13   preferential treatment to class representatives or segments of

14   the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

15   484 F. Supp. at 1079.

16             Here, the Settlement Agreement does not improperly

17   discriminate between any segments of the class, as all class

18   members are entitled to monetary relief based on the number of

19   workweeks they spent working for defendant.  (See Settlement

20   Agreement ¶ 3.2.4.)

21             While the Settlement Agreement allows plaintiff to seek

22   an incentive payment, plaintiff has submitted evidence

23   documenting his time and effort spent on this case, which, as

24   discussed further below, has satisfied the court that his

25   additional compensation above other class members is justified.

26   See Hudson, 2020 WL 2467060, at *9.  The court therefore finds

27   that the settlement treats class members equitably.  See Fed. R.

28   Civ. P. 23(e)(D).

1          E.    Remaining *Hanlon* Factors

2                In addition to the factors already considered as part

3     of the court's analysis under Rule 23(e)(A)-(D), the court must

4     also examine "the extent of the discovery completed . . ., the

5     presence of government participation, and the reaction of class

6     members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.

7                As explained above, counsel engaged in thorough

8     informal discovery.  This factor thus weighs in favor of final

9     approval of the settlement.

10               The seventh *Hanlon* factor, pertaining to government

11    participation, however, does not weigh in favor of approval

12    because, here, there is no government participation.  See *Hanlon*,

13    150 F.3d at 1026.

14               That said, the eighth *Hanlon* factor, the reaction of

15    the class members to the proposed settlement, weighs heavily in

16    favor of final approval, as zero of the 116 class members

17    requested to be excluded, and no class members objected.  See

18    *Hanlon*, 150 F.3d at 1026.

19               In sum, the four factors that the court must evaluate

20    under Rule 23(e) and the eight *Hanlon* factors, taken as a whole,

21    weigh in favor of approving the settlement.  The court will

22    therefore grant final approval of the Settlement Agreement.

23    III. Attorneys' Fees

24               Federal Rule of Civil Procedure 23(h) provides, "[i]n a

25    certified class action, the court may award reasonable attorney's

26    fees and nontaxable costs that are authorized by law or by the

27    parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated

28    class action settlement includes an award of attorneys' fees,

                                    13

1    that fee award must be evaluated in the overall context of the

2    settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th

3    Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443,

4    455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an

5    independent obligation to ensure that the award, like the

6    settlement itself, is reasonable, even if the parties have

7    already agreed to an amount."  In re Bluetooth Headset Prod.

8    Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).  "Under the

9    'common fund' doctrine, 'a litigant or a lawyer who recovers a

10   common fund for the benefit of persons other than himself or his

11   client is entitled to a reasonable [attorneys'] fee from the fund

12   as a whole.'"  Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir.

13   2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478

14   (1980)).  In common fund cases, the district court has discretion

15   to determine the amount of attorneys' fees to be drawn from the

16   fund by employing either the percentage method or the lodestar

17   method.  Id.  The court may also use one method as a "cross-

18   check[ ]" upon the other method.  See Bluetooth Headset, 654 F.3d

19   at 944.

20        As explained above, the settlement agreement appears to

21   provide adequate recovery for the class members.  Further, the

22   payments will be quickly available to class members without the

23   delay associated with further litigation.

24        Like other complex employment class actions, this case

25   presented both counsel and the class with a risk of no recovery

26   at all, as already discussed above.  Plaintiff's counsel took on

27   this matter on a contingency basis.  (See Woods Decl. ¶ 25.)  The

28   nature of contingency work inherently carries risks that counsel

14

1  will sometimes recovers very little to nothing at all, even for

2  cases that may be meritorious.  See Kimbo v. MXD Group, Inc., No.

3  2:19-cv-00166 WBS KNJ, 2021 WL 492493, at *7 (E.D. Cal. Feb. 10,

4  2021).  Where counsel do succeed in vindicating statutory and

5  employment rights on behalf of a class of employees, they depend

6  on recovering a reasonable percentage-of-the-fund fee award to

7  enable them to take on similar risks in future cases.  See id.

8  Plaintiffs' counsel argues that, in light of the result obtained

9  and substantial risk taken in this case, a $116,666.67 fee

10  constituting 33.33% of the fund, as requested here, is

11  reasonable.

12       The Ninth Circuit has established 25% of the fund as

13  the "benchmark" award that should be given in common fund cases.

14  Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,

15  1311 (9th Cir. 1990).  As this court has explained, "a review of

16  California cases . . . reveals that courts usually award

17  attorneys' fees in the 30-40% range in wage and hour class

18  actions that result in recovery of a common fun[d] under $10

19  million."  Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020

20  WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33% of

21  settlement fund); see also Osegueda v. N. Cal. Inalliance, No.

22  18-cv-00835 WBS EFB, 2020 WL 4194055, at *16 (E.D. Cal. July 21,

23  2020) (same).  Given that the requested fee is in line with the

24  typical practice in the Ninth Circuit and in this district, the

25  court agrees that plaintiff's counsel's requested percentage of

26  the common fund is reasonable.

27       "Calculation of the lodestar, which measures the

28  lawyers' investment of time in the litigation, provides a check

15

1  on the reasonableness of the percentage award."  <u>Vizcaino v.</u>
2  <u>Microsoft Corp.</u>, 290 F.3d 1043, 1050 (9th Cir. 2002).

3         Here, a lodestar cross-check confirms the
4  reasonableness of the requested award.  Counsel represent that
5  they have dedicated 119.1 hours of work to these cases.  (<u>See</u>
6  Woods Decl. ¶ 18.)  Counsel states that their customary hourly
7  rates in class actions range from $800.00 to $1,500.00.  (<u>See</u>
8  <u>id.</u>)  The firms specialize in wage and hour matters and class
9  action cases, and counsel represents that comparable hourly rates
10  have been approved by multiple federal and state courts in
11  California.  (<u>See</u> Woods Decl. ¶ 36; <u>see also</u> Docket No. 56 at 18-
12  20.)  For purposes of the lodestar calculation, the court will
13  apply the rate at the lower end of the range provided by counsel.
14  Based on 139.1[3] hours billed at an hourly rate of $800.00, the
15  lodestar figure is $111,280.00.  This figure is nearly identical
16  to the $116,666.67 award requested, with a multiplier of 0.98,
17  confirming the reasonableness of the requested award.  <u>Cf.</u>
18  <u>Vizcaino</u>, 290 F.3d at 1051 (affirming fee award with lodestar
19  cross-check multiplier of 3.65).

20         Accordingly, the court finds the requested fees to be
21  reasonable and will grant counsel's motion for attorneys' fees.
22  IV.  <u>Costs</u>

23         "There is no doubt that an attorney who has created a
24  common fund for the benefit of the class is entitled to
25  reimbursement of reasonable litigation expenses from that fund."

26  _____
27         [3]    This accounts for the 119.1 hours already billed (<u>see</u>
   Woods Decl. ¶ 18), as well as the up to 20 additional hours that
   counsel anticipates needing to bill "to monitor the process
28  leading up to payments made to the class" (<u>id.</u> ¶ 23).

1  In re Heritage Bond Litig., No. 02-cv-1475, 2005 WL 1594403, at

2  *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that

3  plaintiff's counsel shall be entitled to recover reasonable,

4  documented litigation costs.  (See Settlement Agreement ¶ 3.2.2.)

5  Counsel's litigation expenses and costs currently total

6  approximately $16,530.85, though they seek up to $17,000.00.

7  (See Woods Decl. ¶ 26.)  These expenses include copying and

8  mailing expenses, filing fees, mediation fees, consultant fees,

9  and travel expenses.  (See Docket No. 56-3 at 2-3.)  The court

10 finds these are reasonable litigation expenses.  Therefore, the

11 court will grant class counsel's request for costs up to the

12 amount of $17,000.00.

13 V.    Representative Service Award

14        "Incentive awards are fairly typical in class action

15 cases."  Rodriguez, 563 F.3d at 958.  "[They] are intended to

16 compensate class representatives for work done on behalf of the

17 class, to make up for financial or reputational risk undertaken

18 in bringing the action, and, sometimes, to recognize their

19 willingness to act as a private attorney general."  Id. at 958-

20 59.

21        Nevertheless, the Ninth Circuit has cautioned that

22 "district courts must be vigilant in scrutinizing all incentive

23 awards to determine whether they destroy the adequacy of the

24 class representatives . . . ."  Radcliffe v. Experian Info.

25 Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In

26 assessing the reasonableness of incentive payments, the court

27 should consider "the actions the plaintiff has taken to protect

28 the interests of the class, the degree to which the class has

17

1    benefitted from those actions" and "the amount of time and effort
2    the plaintiff expended in pursuing the litigation." Staton, 327
3    F.3d at 977 (citation omitted).  The court must balance "the
4    number of named plaintiffs receiving incentive payments, the
5    proportion of the payments relative to the settlement amount, and
6    the size of each payment."  Id.

7         In the Ninth Circuit, an incentive award of $5,000 is
8    presumptively reasonable.  Davis v. Brown Shoe Co., Inc., No.
9    1:13-cv-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,
10   2015) (citing Harris v. Vector Marketing Corp., No. 08-cv-5198
11   EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting
12   cases)).

13        Plaintiff seeks a $5,000.00 incentive award for Jose
14   Arellano, the lead plaintiff.  Plaintiff's efforts included
15   interviewing and selecting counsel, providing documents to
16   counsel, providing statements to counsel, providing information
17   to counsel, keeping counsel informed of developments and relevant
18   new information, reviewing documents and discovery responses,
19   making himself available to assist counsel in mediation, spending
20   roughly 14 hours litigating the case, and actively participating
21   in decisionmaking in the case.  (See Woods Decl. ¶¶ 12-16.)
22   Counsel represents that plaintiff's efforts were "instrumental"
23   and that "the recovery provided for in the Settlement Agreement
24   would have been impossible to obtain without Plaintiff's
25   participation."  (Id. ¶ 13.)  In light of plaintiffs' efforts and
26   the risks incurred in bringing this action, the court finds the
27   requested incentive awards to be reasonable and will approve the
28   awards.

1    VI.  Underline: Conclusion

2            Based on the foregoing, the court will grant final

3    certification of the settlement class and will approve the

4    settlement set forth in the Settlement Agreement as fair,

5    reasonable, and adequate.  The Settlement Agreement shall be

6    binding upon all participating class members who did not exclude

7    themselves.

8            IT IS THEREFORE ORDERED that plaintiff's unopposed

9    motion for final approval of the class action settlement and for

10   attorneys' fees, costs, and enhancement payments (Docket No. 56)

11   be, and the same hereby is, GRANTED.

12           IT IS FURTHER ORDERED THAT:

13           (1) Solely for the purpose of this settlement, and

14   pursuant to Federal Rule of Civil Procedure 23, the court hereby

15   certifies the following class: all persons employed by defendant

16   in California and classified as hourly-paid or non-exempt

17   employees who worked for defendant or defendant's predecessor

18   between October 31, 2018, and April 14, 2025.

19           (2) The court appoints Jose Arellano as class

20   representative and finds that he meets the requirements of Rule

21   23;

22           (3) The court appoints Justin F. Marquez, Arsine

23   Grigoryan, and Dorota James of the law firm Wilshire Law Firm PLC

24   as class counsel and finds that they meet the requirements of

25   Rule 23;

26           (4) The settlement agreement's plan for class notice

27   satisfies the requirements of due process and Rule 23.  The plan

28   is approved and adopted.  The notice to the class complies with

                                    19

1    Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

2         (5) The court finds that the parties and their counsel

3    took appropriate efforts to locate and inform all class members

4    of the settlement.  Zero employees have requested to be excluded

5    from the class.  Given that no class member filed an objection to

6    the settlement, the court finds that no additional notice to the

7    class is necessary;

8         (6) As of the date of the entry of this order,

9    plaintiff and all class members who have not timely opted out of

10   this settlement hereby do and shall be deemed to have fully,

11   finally, and forever released, settled, compromised,

12   relinquished, and discharged defendants of and from any and all

13   settled claims, pursuant to the release provisions stated in the

14   parties' settlement agreement;

15        (7) Plaintiffs' counsel is entitled to fees in the

16   amount of $116,666.67, and litigation costs up to the amount of

17   $17,000.00;

18        (8) Phoenix Settlement Administrators is entitled to

19   administration costs in the amount of $7,000.00;

20        (9)  Plaintiff Jose Arellano is entitled to an

21   incentive award in the amount of $5,000.00;

22        (10) The remaining settlement funds shall be paid to

23   participating class members and aggrieved employees in accordance

24   with the terms of the Settlement Agreement; and

25        (11) This action is dismissed with prejudice.  However,

26   without affecting the finality of this Order, the court shall

27   retain continuing jurisdiction over the interpretation,

28   implementation, and enforcement of the Settlement Agreement with

20

respect to all parties to this action and their counsel of

record.

Dated:   January 6, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE